COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss. | SUPERIOR COURT<br>CIVIL ACTION NO. |

|  |  |
|---|---|
| iNEBULAR, INC.,<br>      Plaintiff<br><br>v.<br><br>DEUTSCHE BANK TRUST<br>COMPANY AMERICAS,<br>      Defendant | )<br>)<br>)<br>)  12/23/2021<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT AND JURY DEMAND**

### **Parties**

1.  Plaintiff iNebular, Inc. ("iNebular") is a corporation with a principal office at 16 Arrowhead Drive, Saugus, Essex County, Massachusetts.

2.  Defendant Deutsche Bank Trust Company Americas ("Deutsche Bank") is a foreign corporation operating in Massachusetts with a principal office at 1 Columbus Circle, New York, New York County, New York, and a local corporate office at 100 Summer Street, 8th Floor, Boston, Suffolk County, Massachusetts.

### **Facts**

3.  Deutsche Bank utilizes the services of Navitec, Inc. ("Navitec") for recruiting cybersecurity and human resources employees; those employees work for Deutsche Bank on a project-by-project basis.

4.  In all its dealings with iNebular, Navitec acted as an agent of Deutsche Bank with actual or apparent authority to recruit and hire cybersecurity and human resources employees.

5. On or around September 10, 2019, Navitec recruited iNebular for a contracted position with Deutsche Bank and interviewed George Domenikos ("Mr. Domenikos"), the president of iNebular, for that position.

6. At the time, Mr. Domenikos, on behalf of iNebular, was also vying for a similar position with another company. By September 13, 2019, that other company had offered a lucrative contract that would have directly conflicted with the work for Deutsche Bank.

7. On September 16, 2019, Mr. Domenikos participated in a final interview with Deutsche Bank. Following the interview, Deutsche Bank extended a job offer to iNebular through Navitec. The contract for the position provided for full-time work for six months. The posting for the position also promised an extension to the contract at the conclusion of the six months.

8. iNebular initially learned of the job offer from Deutsche Bank from Navitec Staffing Manager Leslie Woodsmith ("Woodsmith"). Woodsmith confirmed the offer via email, writing "Congratulations [on the offer] again!"

9. iNebular accepted the job offer with Deutsche Bank on or around September 18, 2019.

10. On September 18, 2019, and after deciding to accept the Deutsche Bank offer, iNebular formally declined the competing offer with the other company.

11. During a follow-up phone call with Woodsmith, iNebular, through Mr. Domenikos, agreed on a September 30, 2019, start date.

12. On September 27, 2019, having received no further communications regarding the impending start date, Mr. Domenikos emailed Woodsmith. Woodsmith responded that the start date had been pushed back to October 7, 2019, stating, "Deutsche Bank will be providing the details for the first day which I'll send over to you."

13. On October 2, 2019, Woodsmith informed iNebular that Deutsche Bank had asked for another interview, this time with Jennifer Campbell ("Campbell") of the Deutsche Bank cybersecurity team. Mr. Domenikos was puzzled by the prospect of another interview, as iNebular had already accepted Deutsche Bank's job offer. Nevertheless, he agreed to meet with Campbell on the condition that it be only a "conversation."

14. On October 3, 2019, Woodsmith emailed Mr. Domenikos to inform him that the start date had been delayed to October 14, 2019.

15. On October 7, 2019, Mr. Domenikos spoke with Campbell as scheduled. He left the conversation confident that iNebular's agreement with Deutsche Bank, as facilitated by Navitec, remained unchanged.

16. On October 14, 2019, iNebular was informed that Deutsche Bank had "withdrawn its offer" despite iNebular having accepted the offer on September 17, 2019.

17. When Mr. Domenikos asked Navitec why Deutsche Bank had withdrawn its offer, Navitec claimed that it was Deutsche Bank – not Navitec – that made the decision. Deutsche Bank denied that it had ever made an offer, at all.

18. As a direct and proximate result of Deutsche Bank's conduct, iNebular has suffered damages.

## COUNT I
## Breach of Contract

19. iNebular restates the allegations contained in the preceding paragraphs as if set forth fully herein.

20. By September 17, 2019, a contract existed between iNebular and Deutsche Bank wherein Mr. Domenikos, through iNebular, would perform work for Deutsche Bank for an initial

period of six months. The contract was the result of an arms-length negotiation between iNebular and Deutsche Bank's agent, Navitec, and is supported in writing.

21. As Deutsche Bank's agent for recruiting and hiring, Navitec had actual or apparent authority to bind Deutsche Bank to the contract with iNebular.

22. A meeting of the minds occurred, as the parties agreed to all material terms, including the scope of work, duration of employment, and hourly pay rate.

23. The contract was supported by consideration by both parties.

24. Deutsche Bank breached the contract by unilaterally terminating it without cause.

25. iNebular has clean hands, having done nothing to violate its contractual obligations.

26. As a direct and proximate result of Deutsche Bank's breach, iNebular has suffered damages including the loss of the contractual benefits for which it bargained and other direct and consequential damages for which Deutsche Bank is liable.

## COUNT II
### Promissory Estoppel / Detrimental Reliance

27. iNebular restates the allegations contained in the preceding paragraphs as if set forth fully herein.

28. Deutsche Bank, through its agent Navitec, promised iNebular employment.

29. The parties agreed on all material terms of iNebular's employment including rate of pay, dates of employment, and scope of work.

30. iNebular changed its position in reliance on Deutsche Bank's promise by foregoing at least one other employment opportunity.

31. iNebular's reliance on Deutsche Bank's promise of employment was reasonable.

32. As a result of iNebular's reasonable reliance on Deutsche Bank's promise, iNebular suffered damages including lost wages, lost business opportunities, and other direct and consequential damages for which Deutsche Bank is liable.

## COUNT III
## Fraudulent Misrepresentation

33. iNebular restates the allegations contained in the preceding paragraphs as if set forth fully herein.

34. Deutsche Bank, through its agent Navitec, falsely represented that it would hire iNebular.

35. This representation was material to the dealings between the parties.

36. Deutsche Bank knew the representation to be false.

37. Deutsche Bank made the representation for the purpose of inducing iNebular to act in reliance on its representation.

38. iNebular acted in reliance on Deutsche Bank's false representation.

39. As a result of iNebular's reasonable reliance on Deutsche Bank's false representations, iNebular suffered damages including lost wages and other direct and consequential damages for which Deutsche Bank is liable.

## COUNT IV
## Negligent Misrepresentation

40. iNebular restates the allegations contained in the preceding paragraphs as if set forth fully herein.

41. Deutsche Bank, itself and through its agent Navitec, falsely represented a job offer to iNebular.

42. Deutsche Bank was acting in its regular course of business when it made this representation.

43. Deutsche Bank's false representation was made in order to guide iNebular in its business transactions.

44. iNebular justifiably relied upon Deutsche Bank's false representation that it would hire iNebular to its detriment.

45. Deutsche Bank had a duty to use reasonable care in making representations about hiring to iNebular.

46. Deutsche Bank breached its duty of reasonable care. Deutsche Bank made a job offer or allowed its agent to make such an offer on its behalf when it was not prepared to follow through on that offer.

47. As a result of iNebular's justifiable reliance on Deutsche Bank's false representations, iNebular suffered damages including lost wages, lost business opportunities, and other direct and consequential damages for which Deutsche Bank is liable.

## COUNT V
## Violations of M.G.L. c. 93A, § 11

48. iNebular restates the allegations contained in the preceding paragraphs as if set forth fully herein.

49. M.G.L. c. 93A, § 11 prohibits unfair or deceptive acts or practices between persons engaged in trade or commerce.

50. At all relevant times, both Deutsche Bank and iNebular were persons engaged in trade or commerce as defined in M.G.L. c. 93A.

51. Deutsche Bank engaged in unfair or deceptive acts or practices in the course of trade or commerce with iNebular.

52. Deutsche Bank offered, or allowed to be offered on its behalf, a job to iNebular that it had no intention of providing.

53. Deutsche Bank entered into a contract with iNebular that it had no intention of satisfying. Deutsche Bank subsequently breached that contract.

54. Deutsche Bank fraudulently or negligently misrepresented that it would hire iNebular when, in reality, it never intended to do so.

55. When it learned that a job offer had been made to iNebular, neither Deutsche Bank nor its agent Navitec took immediate steps to repudiate that offer. Instead, Deutsche Bank allowed iNebular to persist in the false belief that it had been offered a job.

56. Even after learning that a job offer had already been made to and accepted by iNebular and that Deutsche Bank did not intend to fulfill that offer, Deutsche Bank took steps to falsely make it appear that it was conducting an onboarding process for iNebular.

57. Deutsche Bank, itself and through its agent Navitec, allowed iNebular to persist for weeks in the false belief that it had been offered a job. This included providing iNebular with anticipated start dates multiple times in writing.

58. The foregoing acts and practices are unfair or deceptive both under the common meanings of those terms and under relevant law.

59. Deutsche Bank engaged in the foregoing acts and practices knowingly and willfully.

60. Deutsche Bank is liable for treble damages for knowing and willful violations of M.G.L. c. 93A.

61. As a result of Deutsche Bank's unfair or deceptive acts or practices, iNebular has suffered damages including lost wages, interest, attorneys' fees, costs, and other direct and consequential damages for which Deutsche Bank is liable.

WHEREFORE, Plaintiff, iNebular, Inc., requests that this Honorable Court enter judgment on its behalf against Defendant, Deutsche Bank Trust Company Americas, on all counts and award it:

A. damages in an amount sufficient to compensate it for Deutsche Bank's wrongful conduct;

B. treble damages for knowing and willful violations of M.G.L. c. 93A;

C. reasonable attorneys' fees and costs; and

D. all other relief this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff, iNebular, Inc., demands trial by jury on all issues so triable.

Respectfully submitted,

iNEBULAR, INC.,
Plaintiff,

By its attorneys,

Dated: December 23, 2021

/s/ Gregory Sager
Charles F. Rodman, BBO# 641216
chuck.rodman@rodmanemploymentlaw.com
Michael V. Parras, Jr., BBO # 661298
mike.parras@rodmanemploymentlaw.com
Gregory Sager, BBO # 696749
gregory.sager@rodmanemploymentlaw.com
RODMAN EMPLOYMENT LAW
181 Wells Ave., Suite 101
Newton, MA 02459
Tel: (617) 820-5250

8