**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| iNebular, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 22-10477-NMG |
| Deutsche Bank Trust Company | ) |
| Americas, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

iNebular, Inc. ("iNebular" or "plaintiff") alleges that one of its officers was contacted by a firm which recruits cybersecurity and human resources professionals to work on projects for Deutsche Bank Trust Company Americas ("Deutsche Bank" or "defendant"). After several rounds of communication with the recruiting firm, Navitec, Inc. ("Navitec" or "the Recruiter"), that officer came to believe that iNebular had accepted an offer to work at Deutsche Bank for a period of several months. Deutsche Bank purportedly attempted to withdraw the offer after it had been accepted by iNebular.

In the amended complaint, plaintiff seeks damages for breach of contract, promissory estoppel, fraudulent and negligent misrepresentation and violations of M.G.L. c. 93A. Pending before the Court is defendant's motion to dismiss the

- 1 -

amended complaint for lack of personal jurisdiction and failure
to state a claim.  For the following reasons, the motion will be
denied.

## I.  <u>Background</u>

The following facts are taken from the complaint and
accepted as true for purposes of the pending motion.  iNebular
is a corporation headquartered in Saugas, Massachusetts and had
its principal place of business in Massachusetts during the
pertinent events at issue.  In September, 2019, Navitec
recruited iNebular to enter into a contract with Deutsche Bank
and conducted interviews with iNebular's president, George
Domenikos ("Domenikos").  Domenikos participated in a final
interview with Deutsche Bank on September 16, 2019, and received
an offer via Navitec's Leslie Woodsmith ("Woodsmith") shortly
thereafter.  iNebular accepted the offer on or around September
18, 2019, anticipating that the duration of the contract would
be six months.  It declined offers from other companies which
would have conflicted with its prospective work at Deutsche
Bank.  In a subsequent call with the Recruiter, iNebular agreed
to a September 30, 2019, start date.

The agreed-upon start date was then delayed by one week and
Domenikos was informed that Jennifer Campbell ("Campbell"), a
cybersecurity employee at Deutsche Bank, would conduct another
interview.  Domenikos agreed to the new interview with the

understanding that it would have no effect on the contract offer which he had already accepted.  The start date for iNebular was postponed for another week and Domenikos had his interview with Campbell whereupon, on October 14, 2019, Navitec informed him that Deutsche Bank had withdrawn its offer.

On March 1, 2022, iNebular filed suit against Deutsche Bank in the Massachusetts Superior Court for Suffolk County. Defendant removed the case to this Court under 28 U.S.C. § 1441(a) on grounds of diversity jurisdiction.  Deutsche Bank moved to dismiss the complaint in late April, 2022, after which iNebular filed an amended complaint.  On June 22, 2022, defendant sought to dismiss plaintiff's amended complaint in the motion now pending before the Court.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant

is liable for the misconduct alleged. Ocasio-Hernandez v.
Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider
certain categories of documents extrinsic to the complaint
"without converting a motion to dismiss into a motion for
summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36
(1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993)).  For instance, a court may consider documents of
undisputed authenticity, official public records, documents
central to a plaintiff's claim and documents that were
sufficiently referred to in the complaint. Watterson, 987 F.2d
at 3.

A court may not disregard properly pled factual allegations
in the complaint even if actual proof of those facts is
improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the
court's inquiry must focus on the reasonableness of the
inference of liability that the plaintiff is asking the court to
draw. Id. at 13.

### B.  Agency

The resolution of many of the issues raised in defendant's
motion to dismiss depends upon whether the Recruiter was acting
as defendant's agent.  The Court will therefore begin by
evaluating whether iNebular has adequately pled facts to
demonstrate that Navitec was the agent of Deutsche Bank.  For

the following reasons, the Court finds that plaintiff's
allegations with respect to the existence of an agency
relationship are sufficient at this stage of the proceedings.

The "essential ingredients" of a principal-agent
relationship under Massachusetts law are:

> 1) the agent's power to alter the legal relationships
> between the principal and third parties; 2) a
> fiduciary relationship toward the principal regarding
> matters within the scope of the agency; and 3) the
> principal's right to control the agent's conduct in
> matters within the scope of the agency.

CNE Direct, Inc. v. Blackberry Corp., 821 F.3d 146, 150
(1st Cir. 2016) (citation omitted) (noting that
Massachusetts follows the Second Restatement of Agency).

The conduct of an agent with respect to a third party
is imputed to its principal if the agent acts with actual
or apparent authority or if the principal ratifies the
agent's conduct. See Merrimack Coll. v. KPMG LLP, 480 Mass.
614, 619-20, 108 N.E.3d 430, 437 (Mass. 2018).  The
determination of whether there was an agency relationship
is typically "a question of fact for the jury" in
Massachusetts. White's Farm Dairy, Inc. v. De Laval
Separator Co., 433 F.2d 63, 66 (1st Cir. 1970).  Thus, a
plaintiff meets its burden at the motion to dismiss stage
if it pleads facts sufficient to support the finding of
such a relationship. See, e.g., Focused Impressions, Inc.

v. Sourcing Grp., LLC, 19-CV-11307, 2020 U.S. Dist. LEXIS
43870, at *12-13 (D. Mass. Mar. 13, 2020).

The amended complaint contains specific allegations
sufficient to support a finding that Deutsche Bank was the
principal and Navitec its agent.  iNebular claims that
Deutsche Bank uses Navitec to recruit cybersecurity and
human resources personnel to work for it under contract.
According to plaintiff, the Recruiter reached out on behalf
of defendant and eventually relayed an offer to contract
with Deutsche Bank.  Plaintiff accepted the offer and
agreed to a start date with the understanding that its
contract was with defendant via the Recruiter.  Despite
that purported offer and acceptance, Deutsche Bank
conducted an additional interview after the original start
date and then, through Navitec, rescinded its offer.  Taken
together, these allegations are sufficient to support a
finding that plaintiff has stated a claim that Navitec was
acting as the agent for Deutsche Bank in its interactions
with iNebular.

**C.  Personal Jurisdiction**

In order for the Court to exercise personal jurisdiction
over Deutsche Bank, a non-resident defendant, the exercise of
jurisdiction must comport with the Massachusetts long-arm
statute and constitutional due process requirements.  Because

its personal jurisdiction over defendant has been challenged, the Court will use the prima facie standard and

> take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim.

Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998) (quoting Ticketmaster-New York v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).  Uncontradicted facts averred by the defendant are "add[ed] to the mix". Id.  The ultimate burden of demonstrating that jurisdiction exists rests with the plaintiff. Id.

### 1.  The Massachusetts Long-Arm Statute

The Massachusetts long-arm statute provides for the exercise of personal jurisdiction over

> a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:
>
> [. . .]
>
> (c)  causing tortious injury by an act or omission in this commonwealth;
>
> (d)  causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
>
> (e) having an interest in, using or possessing real property in this commonwealth[.]

M.G.L. c. 223A § 3 (emphasis added).

The Massachusetts Supreme Judicial Court has held that "courts should consider the long-arm statute" before analyzing whether the exercise of jurisdiction comports with constitutional requirements. SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 330, 85 N.E.3d 50, 56 (Mass. 2017). In support of its motion to dismiss, defendant assumes that the Recruiter was not acting as its agent and thus contends there is no personal jurisdiction over it under Massachusetts law.  But apart from the conclusory assertion that Navitec was a third-party not under its control, Deutsche Bank fails to proffer any facts "to the mix", Mass. Sch. Of Law, 142 F.3d at 34, which would refute the existence of an agency relationship.

Plaintiff rejoins that Navitec's actions should be imputed to Deutsche Bank and avers that jurisdiction exists under subsections (c), (d) and/or (e) of the long-arm statute. Because iNebular has alleged specific facts in support of the existence of an agency relationship between Deutsche Bank and Navitec, the Court finds there are grounds for personal jurisdiction in this matter under M.G.L. c. 223A § 3(c).

Plaintiff has alleged that defendant, directly and through the Recruiter, communicated false and misleading statements into Massachusetts which resulted in tortious injury within the Commonwealth.  Courts have held that such conduct is sufficient

- 8 -

to bring a defendant within the scope of jurisdiction conferred
by § 3(c). See Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664
(1st Cir. 1972) (holding that a defendant which sends a false
statement into a state "intending that it should there be relied
upon to the injury of a resident of that state" has acted within
the receiving state under § 3(c)); NRO Bos., LLC v. Yellowstone
Capital LLC, 18-CV-10060, 2020 U.S. Dist. LEXIS 177186, at *15-
16 (D. Mass. Sep. 28, 2020) (same).  Plaintiff has therefore
alleged adequate facts to demonstrate that defendant caused
tortious injury by an act or omission in Massachusetts. See
Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 320-21
(D. Mass. 2008) (holding that injuries in Massachusetts
resulting from fraud, misrepresentations and violations of
Chapter 93A are sufficient to confer personal jurisdiction).

The Court notes that recent decisions have held there is no
"tortious injury" within the meaning of the Massachusetts long-
arm statute when "only monetary damages are sought and those
damages 'are grounded in a breach of contract.'" Dennis Grp.,
Inc. v. Nestle Purina Pet Care Co., 22-CV-30015, 2022 U.S. Dist.
LEXIS 119448, at *8 (D. Mass. Mar. 29, 2022) (quoting Roberts v.
Legendary Marine Sales, 447 Mass. 860, 864, 857 N.E.2d 1089,
1092 (Mass. 2006)); see also Filmore v. VSP N. Am., LLC, 18-CV-
10256, 2019 U.S. Dist. LEXIS 6389, at *18-20 (D. Mass. Jan. 14,
2019).  The underlying decision of the Massachusetts Supreme

Judicial Court in Roberts concerned alleged misrepresentations
by the defendant which were the "but for" cause of the plaintiff
executing a contract for the purchase of a boat. Roberts, 857
N.E.2d at 1092.  Subsequent state court decisions in
Massachusetts have emphasized that the tortious conduct in
Roberts precipitated the formation of a contract from which the
plaintiff's injuries arose. See, e.g., Mongiardo v. Private
Collection Motors, Inc., 100 Mass. App. Ct. 1117, 179 N.E.3d
1133 (Mass. App. Ct. 2021); Bos. Fashion Publ'g, Inc. v. Indus.
Publ'ns, LLC, 86 Mass. App. Ct. 1114, 17 N.E.3d 1119 (Mass. App.
Ct. 2014).

       The amended complaint in the case at bar, however, alleges
that the representations sent by Deutsche Bank and its agent
into Massachusetts were false as to whether an offer had been
made or a contract formed.  For instance, iNebular alleges,
inter alia, that such representations caused it to "persist for
weeks in the false belief that it had been offered a job."
Thus, at least a portion of the monetary damages claimed by
iNebular, which include lost wages and business opportunities,
arose directly from Deutsche Bank's purported tortious conduct
rather than from the breach of a contract which may not have
existed.  Thus, although the allegations here refer to a
potential breach of contract, the "substance of the plaintiff's
complaint", Roberts, 857 N.E.2d at 1092, and the damages claimed

are not entirely contractual and plaintiff has adequately
alleged it suffered a tortious injury in Massachusetts as
required by M.G.L. c. 223A § 3(c).

### 2. Constitutional Requirements for the Exercise of Specific Jurisdiction

Constitutional due process requires that a defendant has
certain minimum contacts with the forum state such that the
exercise of personal jurisdiction "does not offend traditional
notions of fair play and substantial justice." Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945) (cleaned up).  The First
Circuit Court of Appeals has recognized three aspects of the
minimum contacts analysis with respect to the exercise of
specific jurisdiction: (1) the underlying claims asserted
against the defendant must be related to its activities in the
forum state, (2) the defendant must have purposefully availed
itself "of the privilege of conducting activities in the forum
state" and (3) the exercise of jurisdiction must be reasonable.
Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007).  All three
elements are satisfied here.

First, there is a demonstrable nexus between plaintiff's
claims in the amended complaint and the "specific contacts
between the defendant and the forum state." Sawtelle v. Farrell,
70 F.3d 1381, 1389 (1st Cir. 1995).  Although defendant contends
that it did not conduct activity within Massachusetts, the

amended complaint alleges numerous instances in which defendant or its purported agent directed communications into the Commonwealth which affected conduct and caused injury here.

Furthermore, defendant's pertinent contacts with Massachusetts satisfy the two key pillars of purposeful availment: voluntariness and foreseeability. See N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25-26 (1st Cir. 2005) (finding the requirement of purposeful availment was met where the defendant knew his statements would likely induce reliance and cause injury in the forum state). Deutsche Bank and its purported agent, Navitec, "deliberately target[ed] its behavior towards the society or economy of a particular forum", Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011), by communicating allegedly false and misleading statements to iNebular during the process of recruiting, interviewing and negotiating. Defendant denies that the Recruiter was acting as its agent, referring to Navitec as a "third-party" which acted without direction from Deutsche Bank, but cannot avoid the implications of an adequately pled agency relationship for purposes of the pending motion.

Finally, the reasonableness of exercising jurisdiction in this matter, as illuminated by consideration of the gestalt factors, also weighs in favor of finding specific jurisdiction here. The five gestalt factors are:

> (1) the defendant's burden of appearing [in the
> forum], (2) the [forum's] interest in adjudicating the
> dispute, (3) the plaintiff's interest in obtaining
> convenient and effective relief, (4) the judicial
> system's interest in obtaining the most effective
> resolution of the controversy, and (5) the common
> interests of all sovereigns in promoting substantive
> social policies.

Plixer Int'l v. Scrutinizer GmbH, 905 F.3d 1, 12 (1st Cir. 2018)

(quoting Ticketmaster, 26 F.3d at 209).

   The burden on the defendant of appearing in Massachusetts

is, although present, not a determinative factor in the absence

of "some kind of special or unusual burden." eIQnetworks, Inc.

v. BHI Advanced Internet Sols., Inc., 726 F. Supp. 2d 26, 35 (D.

Mass. 2010) (citation omitted).  As to the second factor,

plaintiff is located in Massachusetts and was located here

throughout the course of the events alleged in this case.

Furthermore, Massachusetts has an interest in adjudicating

claims which are alleged to have had their most significant

impact here. See Adams v. Gissell, 20-CV-11366, 2021 U.S. Dist.

LEXIS 257758, at *18 (D. Mass. Dec. 8, 2021) ("the forum state

has a significant interest in adjudicating a dispute when

defendants caused tortious injury within its borders").

   For the third factor, plaintiff's choice of a forum is

"accorded a degree of deference with respect to the issue of its

own convenience." Sawtelle, 70 F.3d at 1395.  There appears to

be no strong interest with respect to the efficiency of the
judicial system or to social policy which would affect the
fourth or fifth factors of the analysis.  Thus, the gestalt
factors are either neutral or slightly in favor of personal
jurisdiction and therefore do not demonstrate that it would be
fundamentally unfair to exercise it. See, e.g., Ticketmaster, 26
F.3d at 209 (holding that the gestalt factors "are not ends in
themselves, but they are, collectively, a means of assisting
courts in achieving substantial justice").

   **D.  Failure to State a Claim**

   In its amended complaint, iNebular asserts five claims
against Deutsche Bank arising out of the communications and
alleged job offer: breach of contract (Count I), promissory
estoppel (Count II), fraudulent and negligent misrepresentation
(Counts III and IV) and violations of M.G.L. c. 93A (Count V).
Defendant has moved to dismiss each of plaintiff's claims on the
following grounds.

   **1.  Breach of Contract**

   Deutsche Bank asserts that iNebular's claim for breach of
contract should be dismissed because the job offer was made by
Navitec and there are no allegations to support the existence of
an agency relationship.  For the reasons already discussed, it
is reasonable to infer from the amended complaint that the
Recruiter was acting as defendant's agent and that a contract

was negotiated between iNebular and Deutsche Bank.  The motion
to dismiss will be denied as to Count I.

### 2.  Promissory Estoppel

In order to state a claim for promissory estoppel, a
plaintiff must plead three essential elements:

> (1) a representation intended to induce reliance on
> the part of a person to whom the representation is
> made; (2) an act or omission by that person in
> reasonable reliance on the representation; and (3)
> detriment as a consequence of the act or omission

Anzalone v. Admin. Office of the Trial Court, 457 Mass. 647,
661, 932 N.E.2d 774, 786 (Mass. 2010) (citation omitted).  The
reliance of a plaintiff on the alleged promise must be
reasonable. See Coll v. PB Diagnostic Sys., 50 F.3d 1115, 1124
(1st Cir. 1995) (quoting Hall v. Horizon House Microwave, 24
Mass. App. Ct. 84, 506 N.E.2d 178, 184 (Mass. App. Ct. 1987)).

Defendant submits that plaintiff's reliance on the alleged
promise of employment was unreasonable in light of the lack of
direct communication between the parties.  That argument is
unavailing.  iNebular alleges that it engaged in multiple
interviews with Navitec and with Deutsche Bank, accepted an
offer to perform services and discussed and agreed upon a start
date.  Such communications with defendant and defendant's
purported agent are sufficient to find that plaintiff's reliance
on the seemingly unambiguous offer of employment was reasonable.
See also Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43,

59, 809 N.E.2d 1017, 1031 (Mass. 2004).  Thus, the Court will
not dismiss plaintiff's claim of promissory estoppel.

### 3.  Fraudulent and Negligent Misrepresentation

Deutsche Bank reprises its argument that it did not
"directly" communicate an offer of employment or other promise
to iNebular.  Navitec did, however, allegedly communicate such
an offer to iNebular.  In light of the Court's previous
conclusion with respect to the existence of an agency
relationship, the motion to dismiss will be denied as to Counts
III and IV.

### 4.  M.G.L. c. 93A § 11

There are three elements of a Chapter 93A claim brought
under Section 11 between parties engaged in the conduct of any
trade or commerce:

> (1) the defendant engaged in an unfair method of
> competition or committed an unfair deceptive act or
> practice; (2) a loss of money or property was
> suffered; and (3) the defendant's unfair or deceptive
> method, act or practice caused the loss suffered.

Anoush Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 16 (1st Cir.
2021) (citation omitted).

Furthermore, the complained-of conduct must have occurred
"primarily and substantially" in Massachusetts. M.G.L. c. 93A §
11; Kuwaiti Danish Comput. Co. v. Dig. Equip. Corp., 438 Mass.
459, 473, 781 N.E.2d 787, 799 (2003) (explaining that courts
should eschew a set of rigid factors and instead evaluate

whether the "center of gravity of the circumstances that give rise to the claim" was within Massachusetts).  Although Deutsche Bank notes this requirement in support of its motion to dismiss, it does not dispute this element. <u>See</u> M.G.L. c. 93A § 11 ("[T]he burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.").

The evaluation of whether there was an actionable unfair act or practice comprising a violation of Chapter 93A depends upon:

> (1) whether the conduct is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers or other businesses.

<u>H1 Lincoln, Inc.</u> v. <u>S. Wash. St., LLC</u>, 489 Mass. 1, 14, 179 N.E.3d 545, 557 (Mass. 2022) (cleaned up).

Defendant argues that a breach of contract alone does not comprise an actionable unfair act or practice.  It is correct that a claim for the violation of Chapter 93A premised on a breach of contract must allege some additional "extortionate quality" such as use of the breach, or threat thereof, to extract an unbargained-for benefit. <u>Atkinson</u> v. <u>Rosenthal</u>, 33 Mass. App. Ct. 219, 226, 598 N.E.2d 666, 670 (Mass. App. Ct.

1992); see also Formulatrix, Inc. v. Rigaku Automation, Inc.,
15-CV-12725, 2016 WL 8710448, at *3 (D. Mass. Apr. 1, 2016).

In the case at bar, however, iNebular has alleged
violations of Chapter 93A which do not arise solely from
Deutsche Bank's purported breach of contract.  It has also based
its claim upon, inter alia, alleged negligent and fraudulent
misrepresentation. See, e.g., Marram, 809 N.E.2d at 1032-33
(holding that an extreme or egregious negligent
misrepresentation may constitute a violation of Chapter 93A and
thus the claim at issue should not have been dismissed).

Determining the boundaries of what may qualify as a
violation of Chapter 93A is a question of law but the
determination with respect to a particular practice or set of
actions is a question of fact. See Ahern v. Scholz, 85 F.3d 774,
797 (1st Cir. 1996) (citation omitted).  Here, plaintiff has
asserted claims that fall within the boundaries of Chapter 93A
as a matter of law. See Zayre Corp. v. Computer Sys. of Am.,
Inc., 24 Mass. App. Ct. 559, 511 N.E.2d 23, 30 n.23 (Mass. App.
Ct. 1987) (holding that "conscious misrepresentation" may be so
unfair and deceptive as to constitute a violation of Chapter 93A
§ 11).  Whether the precise facts underlying iNebular's claims
constitute unfair or deceptive conduct on behalf of Deutsche
Bank is a factual question not subject to disposition at this

- 18 -

stage.  Thus, dismissal of iNebular's claim for violations of Chapter 93A is improper.

### ORDER

For the foregoing reasons, the motion to dismiss of defendant for lack of personal jurisdiction and failure to state a claim (Docket No. 18) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  January 17, 2023